**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gilbert MARTINEZ–JIMENEZ,
Defendant–Appellant.**

No. 87–5305.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 4, 1988.

Decided Jan. 3, 1989.

Michael L. Stern, Los Angeles, Cal., for defendant-appellant.

Jeffrey C. Eglash, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before NELSON, BEEZER and HALL, Circuit Judges.

NELSON, Circuit Judge:

Gilbert Martinez–Jimenez appeals his conviction following a bench trial on one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d). He contends that the trial court erred in concluding that the toy gun that he held during the bank robbery was a "dangerous weapon" as defined by 18 U.S.C. § 2113(d). We affirm the judgment of the district court.

## PROCEDURAL BACKGROUND

On July 14, 1987 a federal grand jury in the Central District of California returned a three-count indictment that charged the appellant and an accomplice, Joe Anthony De La Torre, with armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d) and with carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). At a bench trial the appellant and his accomplice were found guilty of armed bank robbery as charged in count one and not guilty of carrying a firearm during a crime of violence, as charged in counts two and three.

## FACTS

On June 19, 1987, at approximately 12:55 p.m., Martinez–Jimenez and De La Torre entered a bank in Bellflower, California. While De La Torre took cash from a customer and two bank drawers, Martinez–Jimenez remained in the lobby and ordered that the people in the bank lie "face down on the floor." During this time Martinez–Jimenez was holding an object that eyewitnesses thought was a handgun. These persons included two bank employees and a customer who was familiar with guns because he owned several handguns, had handled weapons while in military service, and occasionally used weapons at firing ranges.

The three witnesses testified that the object was a dark revolver about eight or nine inches long and that it caused them to fear for the safety of themselves and of those around them.

At trial, De La Torre testified that neither he nor Martinez–Jimenez had operable firearms when they entered the bank. He testified that Martinez–Jimenez had a toy gun that he and Martinez–Jimenez had purchased at a department store a few hours prior to the robbery. De La Torre also testified that he hid the toy gun in his closet after the robbery, that neither he nor Martinez–Jimenez wanted the bank employees to believe that they had a real gun, and that they did not want the bank employees to be in fear for their lives. Martinez–Jimenez testified that he had carried the toy gun because he felt secure with it and that during the robbery he held it down toward his leg in order to hide it so that people would not see it. The defense introduced into evidence a toy gun. Martinez–Jimenez testified that the gun used in the robbery was the toy gun introduced into evidence. It was stipulated that De La Torre's attorney had received the toy gun offered as the gun used in the robbery from De La Torre's mother.

Based upon observation of the bank robbery photographs and the toy gun, the court concluded that Martinez–Jimenez possessed a toy gun during the course of the bank robbery and that he had kept the toy gun pointed downwards by his side during the course of the bank robbery. On the basis of his display of the toy gun in the course of the robbery, Martinez–Jimenez was convicted under section 2113(d) which provides an enhanced penalty for use of a "dangerous weapon" during a bank robbery.

## STANDARD OF REVIEW

The question presented is whether a toy gun is a "dangerous weapon" within the meaning of the federal bank robbery statute. Interpretation of a statute presents a question of law reviewable de novo. *United States v. Wilson*, 720 F.2d 608, 609 n. 2 (9th Cir.1983), *cert. denied,*

465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984); *United States v. Moreno–Pulido,* 695 F.2d 1141, 1143 (9th Cir.1983).

## DISCUSSION

A robber may be guilty of an armed bank robbery under section 2113(d) if he uses a dangerous weapon or device in the commission of the crime. The instrumentality does not have to be a firearm. The use, or unlawful carrying, of a firearm in a bank robbery is a more serious offense punishable separately under section 924(c). In this case, the appellant carried a toy replica of a firearm that simulated the appearance but not the weight of a genuine firearm. The toy gun did not fit the statutory definition of a firearm under 18 U.S.C. § 921(a)(3). However, it did fall within the meaning of a "dangerous weapon or device" under section 2113(d). Section 2113(d) states that

> Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

In *McLaughlin v. United States,* 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), the Supreme Court found that a defendant who used an unloaded handgun was convicted properly under section 2113(d) because the unloaded handgun was a dangerous weapon under the statute. *Id.* at 17, 106 S.Ct. at 1677–78. Prior to *McLaughlin* this circuit, and other circuits, had assumed that section 2113(d) was violated only by the use of a loaded operable gun. *United States v. Terry,* 760 F.2d 939, 942 (9th Cir.1985); *see also Parker v. United States,* 801 F.2d 1382, 1384 n. 2 (D.C.Cir.1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 964, 93 L.Ed.2d 1011 (1987).

The *McLaughlin* opinion stated:

> Three reasons, each independently sufficient, support the conclusion that an unloaded gun is a "dangerous weapon." First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. *In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue.* Finally, a gun can cause harm when used as a bludgeon.

*McLaughlin,* 476 U.S. at 17–18, 106 S.Ct. at 1677–78 (footnote omitted) (emphasis added).

The *McLaughlin* opinion recognizes that the dangerousness of a device used in a bank robbery is not simply a function of its potential to injure people directly. Its dangerousness results from the greater burdens that it imposes upon victims and law enforcement officers. Therefore an unloaded gun that only simulates the threat of a loaded gun is a dangerous weapon. The use of a gun that is inoperable and incapable of firing also will support a conviction under section 921(a)(3) and section 2113(d). *United States v. York,* 830 F.2d 885, 891 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988); *see also United States v. Goodheim,* 686 F.2d 776, 778 (9th Cir.1982).

These cases reflect a policy that the robber's creation of even the appearance of dangerousness is sufficient to subject him to enhanced punishment. Other cases have given effect to this policy by holding that the trier of fact may infer that the instrument carried by a bank robber was a firearm based only on witness testimony that it appeared to be genuine. *Parker,* 801 F.2d at 1283–84; *United States v. Harris,* 792 F.2d 866, 868 (9th Cir.1986). *McLaughlin* validates this policy but eliminates the inefficiencies associated with the inference process.

A robber who carries a toy gun during the commission of a bank robbery creates some of the same risks as those created by one who carries an unloaded or inoperable genuine gun. First, the robber subjects victims to greater apprehension. Second, the robber requires law enforcement agen-

cies to formulate a more deliberate, and less efficient, response in light of the need to counter the apparent direct and immediate threat to human life. Third, the robber creates a likelihood that the reasonable response of police and guards will include the use of deadly force. The increased chance of an armed response creates a greater risk to the physical security of victims, bystanders, and even the perpetrators. Therefore the greater harm that a robber creates by deciding to carry a toy gun is similar to the harm that he creates by deciding to carry an unloaded gun.

The *McLaughlin* opinion examined the floor debate on the provision that became section 2113(d) and concluded that Congress was concerned with the potential of an apparently dangerous article to incite fear. *McLaughlin*, 476 U.S. at 18 n. 3, 106 S.Ct. at 1678 n. 3. The House debate on the provision that became section 2113(d) indicates that an ersatz wooden gun used in a bank robbery would satisfy the statutory meaning of a dangerous weapon or device. *See* 78 Cong.Rec. 8132 (1934). If Congress intended that an ersatz wooden gun would fall within the statute, by analogy an ersatz plastic gun should fall within the statute. Congress' intent focused on the nature of the effect that the robber creates, not the specific nature of the instruments that he utilizes.

Appellant concedes that *McLaughlin* applies to the use of an inherently dangerous weapon such as an unloaded firearm but argues that it does not apply to a harmless instrumentality of a crime, such as a toy gun, unless the defendant used the instrumentality in an assaultive manner. The trial court found that the replica was a "totally plastic and extremely light" toy gun, and that Martinez–Jimenez had held it downward by his side and not towards any of the bank employees or customers. Therefore the defendant urges that his manner of displaying this particular toy

gun avoids *McLaughlin*'s definition of a dangerous weapon because it would not have instilled fear in an average citizen and would not have created a danger of a violent response.

■ We disagree. A bank robber's use of a firearm during the commission of the crime is punishable even if he does not make assaultive use of the device. He need not brandish the firearm in a threatening manner. *United States v. Mason*, 658 F.2d 1263, 1270–71 (9th Cir.1981). His possession of the weapon is an integral part of the crime. *United States v. Moore*, 580 F.2d 360, 362 (9th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). By analogy, a bank robber's use of a replica or simulated weapon violates section 2113(d) even if he does not make assaultive use of the device. His possession of the instrument during the commission of the crime evidences his apparent ability to commit an assault. The appellant's possession of the toy gun facilitated the crime and increased its likelihood of success. The appellant testified that he carried the toy gun because he "felt secure with it." This suggests that he may not have begun the robbery without it.

Section 2113(d) is not concerned with the way that a robber displays a simulated or replica weapon. The statute focuses on the harms created, not the manner of creating the harm. The record shows substantial evidence that the appellant's possession of the toy gun created fear and apprehension in the victims. Appellant argues that we should put aside this testimony because it was based upon the witnesses' mistaken assessment of the apparent threat. Appellant's argument fails because, during a robbery, people confronted with what they believe is a deadly weapon cannot be expected to maintain a high level of critical perception.[1]

---

1. The recent trend in toy and replica manufacturing to duplicate precisely the outward appearance of genuine weaponry compounds the difficulty and risk of making any distinction. *See* N.Y. Times, Oct. 16, 1988, § 4, at 7, col. 1. This trend has led some state and local govern-

ments to enact bans on realistic toy guns. *See* N.Y. Times, Aug. 5, 1988, § A, at 24, col. 1; L.A. Times, Apr. 29, 1988, § 1, at 2, col. 6 (home ed.). Congress has held hearings on a federal ban. 134 *Cong.Rec.* D 1084 (daily ed. Aug. 11, 1988).

By extension, appellant also argues that the toy gun did not jeopardize the life of any person because it did not increase the police's burden to interdict the crime during its commission or aftermath and could not have provoked the police's use of a deadly response that could have endangered others. This argument fails because the police must formulate a response to an apparently armed robber during the course of the crime, not after it. They must confront the risk that a replica or simulated gun creates before knowing that it presents no actual threat. These confrontations often lead to gunfire and casualties. *See, e.g.,* L.A. Times, Oct. 18, 1988, § 2, at 3, col. 1 (San Diego County ed.); *id.,* May 13, 1988, § 2, at 2, col. 5 (home ed.).

## CONCLUSION

The values of justice, administrability, and deterrence require the rule that a robber's use of a replica or simulated weapon that appears to be a genuine weapon to those present at the scene of the crime, or to those charged with responsibility for responding to the crime, carries the same penalty as the use of a genuine weapon. In this case appellant avoided the harsher penalties associated with use of a firearm in violation of section 924(c) by proving that he only had simulated the use of a firearm. However, the appellant's decision to bluff did not eliminate the harms that Congress intended to address in section 2113(d).

AFFIRMED.