UNITED STATES of America, Plaintiff–Appellee,

v.

Karen J. BOYD, Defendant–Appellant.

No. 90–30110.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1990.

Decided Jan. 31, 1991.

---

Joe M. Quaintance, Tacoma, Wash., for defendant-appellant.

Kenneth G. Bell, Asst. U.S. Atty., Tacoma, Wash., for plaintiff-appellee.

Before FLETCHER, FARRIS and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Karen Boyd appeals her sentence under the United States Sentencing Guidelines following her guilty plea to four counts of bank robbery, in violation of 18 U.S.C. § 2113(a). Boyd claims that the sentencing court incorrectly enhanced the offense level both by erroneously finding that a road flare constituted a dangerous weapon, and by improperly aggregating the losses sustained in the four bank robberies. We conclude that a road flare, as used, constitutes a dangerous weapon under the Guidelines and therefore affirm in part. However, because the district court aggregated the losses from the four robberies in computing the sentence, we remand for appropriate adjustment.

## FACTS AND PROCEDURAL HISTORY

On April 18, 1988, Karen Boyd walked up to the drive-up window of the Puyallup Valley Bank, in Puyallup, Washington, and handed the teller a note demanding money and warning that Boyd had a stick of dynamite. When the teller hesitated, Boyd exposed a book of matches and a road flare that appeared to be the dynamite. The teller then handed over $319.00 to Boyd, who left on foot. Soon thereafter, agents arrested Boyd who confessed to the Puyallup Valley Bank robbery, and to five other bank robberies, or attempts, in the Se-attle/Everett/Tacoma area. All involved the same method used in the Puyallup robbery.

Boyd was indicted for the April 18, 1988 robbery of the Puyallup Valley Bank. Subsequently, she waived her right to trial by indictment and entered into a plea agreement. By its terms, Boyd pled guilty to a four-count information and acknowledged three other bank robbery attempts. Three of the four counts charged unarmed bank robbery and the remaining count, for the Puyallup Valley Bank robbery, charged armed bank robbery.

At the time of her original sentencing, Boyd was not sentenced pursuant to the Guidelines because this Circuit had ruled that the Guidelines were unconstitutional. After the Supreme Court upheld the constitutionality of the Guidelines in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), the trial court granted Boyd's motion for resentencing.

At the resentencing hearing, Boyd's counsel argued that a three-level enhancement for brandishing a weapon was unwarranted because the "weapon" was only a road flare. The district court rejected the argument, finding the road flare "was a dangerous weapon under the facts and circumstances of this case." The court then enhanced Boyd's offense level by three for use of a dangerous weapon, and by an additional two levels because the total aggregate loss from the four bank robberies exceeded $10,000. The court made further adjustments based on the multiple counts of conviction and acceptance of responsibility. Boyd now appeals the amended Judgment and Commitment.

## DISCUSSION

### A. *Dangerous Weapon*

 Boyd contends that, because the "weapon" used in the Puyallup Bank robbery was only a road flare, the district court improperly enhanced her offense level by three points for use of a dangerous weapon. The district court's determination that a road flare falls within the Guidelines' definition of "dangerous weapon"

turns on a legal question which we review *de novo. See United States v. Martinez–Jimenez*, 864 F.2d 664, 665 (9th Cir.1989) (whether toy gun is a "dangerous weapon" reviewed *de novo*). *See also United States v. Anderson*, 895 F.2d 641, 644 (9th Cir.1990) (determination as to scope of Guidelines presents question of construction reviewable *de novo*).

■ Guideline § 2B3.1(b)(2)(C) requires an offense level to be increased by three where a firearm or other dangerous weapon was "brandished, displayed or possessed." U.S.S.G. § 2B3.1(b)(2)(C) (1988). As there is no definition of "dangerous weapon" within the guideline itself, Boyd contends the definition provided in § 1B1.1, Application Note 1(d) is binding. Application Note 1(d) provides: " 'Dangerous weapon' means an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, Application Note 1(d) (1988). It was not clearly erroneous for the district court to find that a road flare is dangerous per se because an ignited flare may be used to inflict bodily injury.

Moreover, we have held that an object's ability to incite fear and violence because it appears to be dangerous is sufficient to render it a "dangerous weapon" for Guidelines' purposes. *Smith*, 905 F.2d 1296, 1300 (9th Cir.1990). In *Smith*, we found that an inoperable pellet gun came within the Guidelines' meaning of "dangerous weapon" because the fear that an unloaded gun instills in the average citizen creates the possibility of imminent, violent response by law enforcement officials. *Id.*

This reasoning is borrowed from pre-Guidelines cases that interpreted the meaning of "dangerous weapon" under the federal bank robbery statute. Title 18 U.S.C. § 2113(d) provides:

Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a *dangerous weapon* or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(d) (1988) (emphasis added). In *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), the Supreme Court considered an unloaded handgun a "dangerous weapon" within the meaning of section 2113(d) for three reasons:

First, a gun is an article that is typically and characteristically dangerous ... and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause harm when used as a bludgeon.

*Id.* at 17–18, 106 S.Ct. at 1678.

In *United States v. Martinez–Jimenez*, 864 F.2d 664 (9th Cir.), *cert. denied* 489 U.S. 1099, 109 S.Ct. 1576, 103 L.Ed.2d 942 (1989), we followed the reasoning of *McLaughlin*[1] in holding that a toy gun fell within the meaning of a "dangerous weapon" under 18 U.S.C. § 2113(d). Specifically, we explained how carrying a toy gun poses the same risks as carrying an unloaded or inoperable gun:

First, the robber subjects victims to greater apprehension. Second, the robber requires law enforcement agencies to formulate a more deliberate, and less efficient, response in light of the need to counter the apparent direct and immediate threat to human life. Third, the robber creates a likelihood that the reasonable response of the police and guards will include the use of deadly force. The increased chance of an armed response creates a greater risk to the physical security of victims, bystanders, and even the perpetrators.

*Id.* at 666–667.

Like toy or inoperable guns that are thought to be loaded, a road flare thought

---

1. *McLaughlin* also discussed § 2113(d)'s legislative history. The floor debate indicates that "Congress regarded incitement of fear as sufficient to characterize an apparently dangerous article (such as a wooden gun) as 'dangerous' within the meaning of the statute." *McLaughlin*, 476 U.S. at 18 n. 3, 106 S.Ct. at 1678 n. 3 (citation omitted).

to be dynamite instills fear in victims and bystanders, creating the risk of violent response. The road flare's use in this case also created the dangerous possibility that law enforcement officials would respond with deadly force, posing unacceptable risks to all parties.

Under the Guidelines in effect at the time of sentencing, the road flare was both inherently and apparently dangerous. The district court's enhancement for use of a "dangerous weapon" therefore was proper.

Our holding, of course, does not bar consideration of the actual nature of the device used when a trial judge considers where in the appropriate range to impose a sentence. There is an entirely different risk of harm when a robber uses a mock weapon instead of a loaded firearm.

### B. *Aggregation of Loss*

Both parties contend, but for different reasons, that the district court improperly enhanced Boyd's offense level by two, based on the combined loss of the four bank robberies. We agree with the government that Boyd's offense level should have been adjusted by only one level based on the amount of the loss. Guideline § 2B3.1(b)(1)(C) requires the offense level be enhanced by two when the loss exceeds $10,000. U.S.S.G. § 2B3.1(b)(1)(C) (1988). While the loss of the four robberies totalled more than $10,000, no single robbery involved such a loss. Guideline § 3D1.2(d) specifically excludes bank robbery from the group of offenses for which the total loss for all counts is to be added together to determine the offense level. U.S.S.G. § 3D1.2, Application Note 6 (1988). Rather than adding the total loss involved for all counts, the district court should have calculated the offense level of each count separately and then applied the upward adjustment provided for by the Guidelines for convictions on multiple counts. *See* Guidelines § 3D1.4. Consequently, Boyd's sentence was based on an incorrect application of the sentencing guidelines, requiring remand. *See* 18 U.S.C. § 3742(f)(1) (1988).

### CONCLUSION

Because we find a road flare is both inherently and apparently dangerous, the district court did not err by considering a road flare a dangerous weapon. The court, therefore, correctly enhanced Boyd's offense level for use of a dangerous weapon. The court incorrectly added two levels, however, by improperly aggregating the losses from the four robberies. Thus, a remand is necessary to make the appropriate adjustments.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.