**UNITED STATES of America, Plaintiff–Appellee,**

*v.*

**James Everett PERRY, Defendant–Appellant.**

**No. 91–6483.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1992.

Decided April 6, 1993.

**306**

proached teller Karen Cochran, who was on the telephone at the time, opened up his jacket, and told her to hang up the phone. Cochran complied. At trial, Cochran testified that she believed the robber had a gun because, when he opened his jacket a second time, "he stuck his hand [in] like he was going to get something out." Cochran never saw a weapon but testified that she was afraid to look down at the robber's hands for fear she would see a weapon. The robber warned Cochran not to alert anyone.

The robber told Cochran to hand over her $100, $50, and $20 bills. She complied and asked the robber if that was all. The robber responded no and instructed her to give him the $10 and $5 bills as well. She did so. The robber walked out of the bank with $3,057. The robbery was filmed by the bank's surveillance camera.

Earlier the same day, an individual fitting the description of the robber had been seen in the lobby of a nearby bank, the First National Bank of Pikeville. The individual appeared suspicious. When he left that bank, a teller recorded a description of his vehicle and the license plate number. Shortly after the robbery of the Pikeville National Bank, this vehicle was discovered in a nearby parking lot. The owner of the vehicle was identified as Judy Nichols. She informed police that she had loaned the truck to Ezekiel Canterbury.

When Canterbury returned to the truck sometime after the robbery, police questioned him. Initially, Canterbury fabricated a story and denied knowing about the robbery, but then he admitted he had lied to them. Canterbury told the police that Perry had stayed at his house, that he had given Perry a ride to the bus station, and that Perry admitted he had robbed a bank. According to Canterbury, Perry gave him $500 from the proceeds of the robbery. Canterbury also informed police that Perry admitted he had carried a wooden gun into the bank and intended to display the gun, but that it had gotten stuck in his pants when he tried to remove it during the robbery. Canterbury led police to the wooden gun.

James E. Arehart, Asst. U.S. Atty., Karen K. Caldwell, U.S. Atty., Kenneth Taylor, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Lexington, KY, for plaintiff-appellee.

Ned B. Pillersdorf (briefed), Pillersdorf, Derossett & Barrett, Prestonsburg, KY, Michael S. Endicott (argued and briefed), Paintsville, KY, for defendant-appellant.

Before: GUY and BATCHELDER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

BATCHELDER, Circuit Judge.

Defendant-appellant, James Everett Perry, appeals his conviction and sentence for armed bank robbery under 18 U.S.C. § 2113(a) and (d). We reverse the conviction as to § 2113(d), affirm the conviction as to § 2113(a), and remand for resentencing under § 2113(a).

**I.**

On May 28, 1991, the Tug Valley Branch of the Pikeville National Bank in South Williamson, Kentucky, was robbed. A man with dark hair and a mustache and wearing a gray suit entered the bank. He ap-

The police caught up with Perry at the home of a relative. When the police arrived, Perry, in an apparent effort to hide the bank robbery proceeds, tossed the money into a box and shoved the box against a wall. Upon being questioned, Perry initially denied knowledge of the bank robbery and stated that he had not been in the South Williamson area, where the subject bank was located, for two years. The police recovered $370 (allegedly bank robbery proceeds) from Perry's girlfriend, to whom Perry, using an alias, had sent the money.

A day or so after the robbery, the police showed Karen Cochran a number of photographs. She identified two photographs as those of the man who had robbed her. After she identified the individual, she was informed that she had identified the suspect, Perry.

On June 6, 1991, Perry was charged, in a one-count indictment, with violating 18 U.S.C. § 2113(a) and (d). On September 23, 1991, Perry made a motion to suppress the photo identification. After a hearing, the district court denied the motion. Perry was tried before a jury. The district court instructed the jury separately on § 2113(a), the bank robbery statute, and § 2113(d), an enhancement provision that provides enhanced penalties for bank robbery involving assault or use of a dangerous weapon or device. However, the court declined to instruct the jury on the lesser included offense of bank larceny, 18 U.S.C. § 2113(b). Perry was convicted under § 2113(a) and (d). On December 10, 1991, the district court sentenced Perry to 97 months incarceration. This sentence, which was at the bottom of the applicable sentencing range under the United States Sentencing Guidelines, was based on a total offense level that included a two-level enhancement for obstruction of justice and a three-level enhancement for possession of a firearm during a robbery. Perry timely appealed.

## II.

### A.

■ Perry contends that the evidence was insufficient to support his conviction for the use of a dangerous weapon or device to rob a bank in violation of 18 U.S.C. § 2113(a) and (d). We agree that the evidence will not support a conviction under § 2113(d), but find that the evidence was more than sufficient to support defendant's conviction under § 2113(a).

■ We review a sufficiency of the evidence challenge to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brown*, 959 F.2d 63, 67 (6th Cir.1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis by *Jackson* court). *See also United States v. Harris*, 792 F.2d 866, 868 (9th Cir.1986) (upholding against sufficiency of the evidence challenge a conviction under § 2113(d)).

Section 2113 reads, in part, as follows:

**§ 2113.  Bank robbery and incidental crimes**

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; ...

\*     \*     \*     \*     \*     \*

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both;

...

\*     \*     \*     \*     \*     \*

**(d)** Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

In *McLaughlin v. United States,* 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), the Supreme Court held that an unloaded gun is a "dangerous weapon" within the meaning of § 2113(d). The Court articulated three reasons for finding that an unloaded gun is a dangerous weapon:

First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause harm when used as a bludgeon.

*Id.* at 17–18, 106 S.Ct. at 1678 (footnote omitted).

Following *McLaughlin,* at least three courts of appeals, including this Court, have concluded that a toy gun is also a dangerous weapon. *See United States v. Medved,* 905 F.2d 935 (6th Cir.1990), *cert. denied,* 498 U.S. 1101, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991); *United States v. Cannon,* 903 F.2d 849 (1st Cir.), *cert. denied,* 498 U.S. 1014, 111 S.Ct. 584, 112 L.Ed.2d 589 (1990); *United States v. Martinez–Jimenez,* 864 F.2d 664 (9th Cir.), *cert. denied,* 489 U.S. 1099, 109 S.Ct. 1576, 103 L.Ed.2d 942 (1989).

In *Medved,* we agreed with the reasons articulated by the Ninth Circuit for concluding that a toy gun is a "dangerous weapon or device":

"A robber who carries a toy gun during the commission of a bank robbery creates some of the same risks as those created by one who carries an unloaded or inoperable genuine gun. First, the robber subjects victims to greater apprehension. Second, the robber requires law enforcement agencies to formulate a more deliberate, and less efficient, response in light of the need to counter the apparent direct and immediate threat to human life. Third, the robber creates a likelihood that the reasonable response of police and guards will include the use of deadly force. The increased chance of an armed response creates a greater risk to the physical security of victims, bystanders, and even the perpetrators. Therefore, the greater harm that a robber creates by deciding to carry a toy gun is similar to the harm that he creates by deciding to carry an unloaded gun."

*Id.* at 940 (quoting *Martinez–Jimenez,* 864 F.2d at 666–67). Under the rationale of *Medved,* we conclude that the carved wooden gun that Perry possessed when he committed the bank robbery was a dangerous weapon or device under § 2113(d).

Section 2113(d) proscribes, not possession of a dangerous weapon or device, but the "assault[ing]" or "put[ting] in jeopardy the life [of] any person by the use of a dangerous weapon or device...." The government argues that had Karen Cochran not been afraid to look down at Perry's hands while the robbery was occurring, for fear that he held a weapon, she might have seen a gun. According to the government, the potential for a higher level of force, because Perry possessed a concealed wooden gun, implicates § 2113(d), despite the fact that the wooden gun remained concealed throughout the robbery. However, there is no evidence in the record that Perry assaulted anyone with the wooden gun, that anyone, including Cochran, saw the gun, or that Perry even mentioned a gun during the robbery.

■ The display of a toy or wooden gun during a bank robbery constitutes "use." *See, e.g., Martinez–Jimenez,* 864 F.2d at 667 (toy gun used where defendant held it by his side during robbery). Where a teller catches a glimpse of an object that the robber represents to be a gun, but that turns out to be an army knife, this also has

been held sufficient to constitute use under § 2113(d). *See United States v. Benson,* 918 F.2d 1, 3 (1st Cir.1990) ("The verbal announcement and peek preview were sufficient to create an 'immediate danger that a violent response [would] ensue'...." (quoting *McLaughlin,* 476 U.S. at 18, 106 S.Ct. at 1678)); *see also United States v. Crouthers,* 669 F.2d 635, 638–39 (10th Cir. 1982) (where defendant and his cohort were, unbeknownst to victim, acting in concert to rob a bank, and defendant represented to victim that defendant's cohort had a loaded gun in defendant's back, even though victim did not see gun and gun was in fact unloaded, because a reasonable person in victim's position would have believed his life was in jeopardy, evidence was sufficient to establish that victim's life was put in jeopardy by the "use" of a dangerous weapon).

The government, however, has not cited, nor have we found, any cases in which a court has based liability under § 2113(d) solely on concealed possession of a nongenuine gun. Some courts, in dicta, have intimated that possession of an unseen gun, or an object that is not identifiable as a gun, is insufficient to trigger the enhancement provisions of § 2113(d). *See United States v. Wardy,* 777 F.2d 101, 105 (2d Cir.1985) ("If the police had apprehended a bank robber during the course of a robbery and subsequently discovered that he had carried a gun concealed in his belt or in a shoulder holster, a conviction under § 2113(d) would probably be unwarranted. But that is not the situation before us."), *cert. denied,* 475 U.S. 1053, 106 S.Ct. 1280, 89 L.Ed.2d 587 (1986); *United States v. Cobb,* 558 F.2d 486, 489 (8th Cir.1977) ("We know of no case however, which has permitted the jury to convict under § 2113(d) on the mere inference that a partially concealed object was a loaded gun.... The testimony regarding the holes within the wrapped newspaper was sufficient to es-

tablish the element of intimidation and fear necessary for both § 2113(a) and § 2113(d); it was, however, insufficient to establish that a gun was in fact used in the robbery."); *cf. Benson,* 918 F.2d at 3 n. 5 (noting that the legislative history behind § 2113(d) indicates that the statute would cover, for example, the "use of a water bottle which [the] robber claimed to be nitroglycerin").

We find the reasoning in *Wardy* and *Cobb* persuasive on this issue, and we conclude that notwithstanding the teller's fear that the defendant might have been armed, Perry's possession of a nongenuine gun which was concealed throughout the robbery did not constitute "use of a dangerous weapon or device" under § 2113(d). This conclusion is fully consistent with our reasoning in *Medved.* First, Perry did not brandish, display, or even allude to a gun. Under our analysis, it is irrelevant whether the teller experienced greater apprehension because she believed that the defendant might be armed. *Cf. United States v. Robinson,* 527 F.2d 1170 (6th Cir.1975). Second, absent evidence that any police officer or anyone in the bank was made aware that Perry possessed a gun, a more deliberate response by the police to the robbery on the basis that Perry was armed was not required. Finally, because no bank employees or customers knew of the concealed gun, there was no greater risk to the victim, bystanders, police, or robber.

■ We emphasize that our conclusion that "use of a dangerous weapon" does not include concealed possession of a toy gun comports with the language of the statute. Section 2113(d) enhances the sentence for anyone who, in committing or attempting to commit bank robbery, "puts in jeopardy the life of any person by the use of a dangerous weapon...." Thus, "use" plainly connotes something more than "possession." [1] Congress could have provided

---

1. We acknowledge that courts have broadly construed the term "use" in an analogous statute, 18 U.S.C. § 924(c), which enhances the sentence for anyone who "... during and in relation to a crime of violence or drug trafficking crime ... uses or carries a firearm...." *See United States*

*v. Christian,* 942 F.2d 363, 368 (6th Cir.1991) ("Section 924(c)(1) reaches the possession of a firearm which in any manner facilitates the execution of a felony."), *cert. denied,* — U.S. ——, 112 S.Ct. 905, 116 L.Ed.2d 806 (1992). However, we have held that "... however

for enhanced statutory penalties whenever a gun was "possessed." Congress did not.[2] Congress could have provided for enhanced statutory penalties whenever the perpetrator of a § 2113(a) or (b) offense caused his victim to fear that the victim's life might be endangered because of a dangerous weapon. Congress did not.[3] Neither the plain language of the statute nor case law construing this statute supports an extension of "use of a dangerous weapon" to include the concealed possession of a nongenuine gun.

▪ However, while we have held that on these facts the defendant's conviction under § 2113(d) must be reversed, we also hold that the evidence was clearly sufficient to permit any reasonable jury to find that the defendant violated § 2113(a). The evidence is clear that the defendant took from the bank teller money which was in the custody and control of the bank. And the evidence is clear that the defendant accomplished this taking by intimidation, which for purposes of § 2113(a) has been defined as "conduct and words calculated to create the impression that any resistance or defiance by the [teller] would be met by force." *United States v. Jones*, 932 F.2d 624, 625 (7th Cir.1991). Indeed, this Court has held that

> a jury would be justified in finding intimidation where a man clothed in a "leather coat" (so that a weapon could presumably be concealed) after waiting somewhat nervously in line, attempts, at best, a sham commercial transaction, and commands with the imperative "give" a teller to turn over "*all* [her] money."

*United States v. Robinson*, 527 F.2d 1170, 1172 (6th Cir.1975) (citation omitted) (alteration in original). Accordingly, the defendant's conviction on the charge of violating 18 U.S.C. § 2113(a) is affirmed.

▪ By the same token, it is also clear from the record that the evidence does not support the instructing of the jury on § 2113(b), commonly known as bank larceny. Section 2113(b) is directed toward one who "takes and carries away, with intent to steal or purloin ... money ... in the care, custody, control, management or possession of any bank...." Defendant maintains that bank larceny is a lesser included offense of bank robbery, and that the district court erred in refusing to give the bank larceny instruction to the jury. We

---

broadly it may be construed, section 924(c) will *not support conviction for mere possession of a firearm during the course of criminal conduct." United States v. Brown*, 915 F.2d 219, 224 (6th Cir.1990).

We also acknowledge that a wholly concealed genuine firearm that "emboldens" a defendant may be "used" within the meaning of § 924(c), *see id.* at 224, and a toy gun may be both a "dangerous weapon" and "used" within the meaning of § 2113(d) where it was displayed although not brandished in an assaultive manner during a bank robbery by a defendant who carried it because he "felt secure with it" (suggesting to the Ninth Circuit that the defendant "may not have begun the robbery without it"). *Martinez–Jimenez*, 864 F.2d at 667. However, we are unable to stretch credulity or further extend the statute to reach the conduct of this defendant by holding that the wholly concealed possession of a toy gun would have so emboldened him during the robbery of the bank that such possession constituted the "use of a dangerous weapon."

2. Indeed, in contrast to § 2113(d), the sentencing guidelines provide that where a dangerous weapon, or an object that appears to be a dangerous weapon, *see* U.S.S.G. § 2B3.1, Commentary, Application Note 2, is "brandished, dis-

played, *or possessed*" during a robbery, a three-level sentence enhancement is proper. U.S.S.G. § 2B3.1(b)(2)(E) (emphasis added).

The base offense level for § 2113(a) offenses is 20. The base offense level for offenses under § 2113(a) and (d), together, also is 20. *See* U.S.S.G. § 2B3.1. Even though, here, § 2113(d) is inapplicable, a three-level enhancement for possession of a dangerous weapon is proper under § 2B3.1(b)(2)(E). Thus, our reversal of Perry's conviction under § 2113(d) will not affect Perry's total offense level or the applicable sentencing range. However, were the erroneous § 2113(d) conviction allowed to stand, this conviction could have other consequences later, *e.g.*, under the armed career criminal provisions of the Guidelines.

3. With all due respect to the legal precedent in this area and the government's commendable zeal in this particular case, we believe that to premise § 2113(d) liability, as the government does, on the proposition that had the teller not been afraid to look down at the robber's hands during the robbery for fear that the robber might have a gun, she might have seen what she might have believed was a real gun, is to engage in the "if we had some ham we could have a ham sandwich *if we had some bread*" school of statutory construction.

need not reach the issue of whether bank larceny is a lesser included offense of bank robbery,[4] since there is no evidence in the record to support a finding that the lesser included offense of bank larceny, which lacks the element of force and violence or intimidation, was committed while the greater offense of bank robbery was not. *See United States v. LaJoie,* 942 F.2d 699, 701 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 328, 116 L.Ed.2d 268 (1991). In short, no rational jury could have found that the teller in this case handed over the money to the defendant out of any other motivation than fear, and the district court did not err in refusing to give the requested instruction.

## B.

■ Perry next argues that the trial court erroneously permitted the victim bank teller to testify regarding her out-of-court identification of him from a photo array which he claims was impermissibly suggestive. We agree with the trial court that the witness could testify in court as to her out-of-court identification of the accused, because the pre-trial identification procedures were not impermissibly suggestive.

Permitting a witness to testify at trial about his or her pre-trial identification of a defendant is altogether proper. Fed. R.Evid. 801(d)(1)(C); *Anderson v. Maggio,* 555 F.2d 447, 450 (5th Cir.1977). Thus, the bank teller's testimony regarding Perry was proper, particularly because the previous out-of-court identification comported with constitutional standards. Perry contends that the out-of-court photo array used to identify him impermissibly distinguishes Perry from the other photos in that his photo does not have mug shot height lines in the background. Such an argument is unavailing. *See Cikora v. Dugger,* 840 F.2d 893 (11th Cir.1988) (although defendant was only one in photo line-up who appeared with height markings visible be-

hind him, this fact alone did not induce the witness to pick out correct suspect).

## C.

■ Finally, Perry argues that the district court erred in increasing his offense level, pursuant to U.S. Sentencing Guidelines § 3C1.1, for obstruction of justice. We review an enhancement under the Guidelines for clear error. *United States v. Tucker,* 925 F.2d 990, 991 (6th Cir.1991).

The district court, in enhancing Perry's sentence, relied on three incidents. First, it cited Perry's failure to comply with its order to be clean shaven at trial (to facilitate identification). Second, the court noted Perry's attempt to conceal the evidence of the crime. Perry was at a relative's house shortly after the robbery, and when he heard that the police were at the front door, he quickly threw some money and papers into a box and allegedly told his relative to take the money and hide it. Third, Perry sent some of the robbery proceeds to his girlfriend in Florida using aliases for both the sender and the addressee.

The obstruction of justice guideline reads in full, "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1. The Commentary to § 3C1.1 reads in pertinent part:

The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:

\* \* \* \* \* \*

(d) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding ... or attempting to do so; however, if such conduct occurred contemporaneously with arrest ..., it shall not, standing alone, be sufficient

---

4. The Ninth Circuit, for example, has ruled that bank larceny is not a lesser included offense of bank robbery because bank larceny contains a specific intent element, *i.e.,* the intent to steal or purloin, which need not be proved in the bank robbery context. *United States v. Gregory,* 891 F.2d 732, 734 (9th Cir.1989).

to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender;

U.S.S.G. § 3C1.1 Commentary, Application Note 3.

■ As to the first ground, the refusal to appear at trial clean shaven may warrant the enhancement. Perry attempted to disguise himself behind a full-grown beard and succeeded in part—the bank teller was unable to positively identify him in court. Although this had minimal evidentiary impact on the case because other evidence linked Perry to the crime, it is nonetheless an attempt to obstruct the prosecution of the case.

■ However, the second and third grounds for enhancement are contrary to the Guidelines. Perry's hurried attempt to conceal the evidence as the police stood at the front door was "contemporaneous with arrest" and was not, in any way, "a material hindrance" to the investigation or prosecution of his case. Perry's simultaneous request that his relative conceal the money he had just put in the box is part of the same incident and does not sufficiently change the nature of the act. This action fits squarely within the Commentary as an act not supporting the enhancement.

■ Likewise, by simply sending money (which Perry contends was never linked to the crime) to a girlfriend in Florida, Perry did not earn the obstruction of justice enhancement. At the time Perry sent the money, he had no knowledge that an investigation was underway, he did not subvert the investigation by his act, and he did not effect a delay in the prosecution of his crime. Even if this money was in fact the proceeds of the bank robbery, Perry's spending it or giving it away does not come within the Guidelines' purview without at least a minimal showing by the government

that it was done with the purpose of interfering with investigation or prosecution of the crime. Furthermore, the use of aliases when mailing the money is not sufficient to tip the scales in favor of the enhancement. *Cf. United States v. Wilson,* 904 F.2d 234 (5th Cir.1990) (use of alias during commission of offense does not justify obstruction of justice enhancement).

We conclude that the district court improperly considered both the attempt to hide the proceeds and the mailing of money to Florida in enhancing Perry's sentence. On remand and resentencing, the district court should consider whether the failure to appear clean shaven at trial is itself enough to justify the enhancement.

### III.

Accordingly, we affirm the conviction under 18 U.S.C. § 2113(a), we reverse the conviction under 18 U.S.C. § 2113(d) and remand this case for resentencing.

CELEBREZZE, Senior Circuit Judge, dissenting.

I must respectfully dissent from the opinion of the majority. For reasons which I will more fully explain below, I would AFFIRM the judgment of the district court.

The majority finds that the evidence adduced at trial was insufficient as a matter of law to uphold a conviction pursuant to 18 U.S.C. § 2113(d).[1] Defendant argues that it was error to instruct the jury on armed bank robbery where the evidence shows that he only carried a toy gun which was never brandished or displayed in any way. Defendant, while acknowledging that a toy gun can be considered a dangerous weapon, argues that there must at least be some evidence the gun was used in the robbery. Defendant asserts that the only link between the toy gun and the armed bank robbery is the subjective fear

---

1. It is noted that defendant's argument was not styled in terms of a challenge to the sufficiency of the evidence supporting a conviction. Rather, defendant argues that the evidence was insufficient to warrant a jury instruction on Armed Bank Robbery, 18 U.S.C. § 2113(d).

However, the gist of his argument relates to the same issue as addressed by the majority, to-wit: can the possession of a toy gun, not brandished, serve as the basis to support a conviction under § 2113(d).

of the bank teller which is not sufficient evidence that the gun was used in the robbery.

The majority concludes that the evidence was insufficient for a jury to find that defendant used a dangerous weapon or device. There is, however, no question that a toy gun may be a dangerous weapon. The case of *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), established the principle that an unloaded gun is a dangerous weapon within the meaning of 18 U.S.C. § 2113(d) because: 1) it is an article typically and characteristically dangerous; 2) it creates an imminent danger of a violent response; and 3) it can be used as a bludgeon. This court subsequently extended this holding declaring that a toy gun can also be considered a dangerous weapon under 18 U.S.C. § 2113(d). *United States v. Medved*, 905 F.2d 935 (6th Cir.1990). The *Medved* court noted that a toy gun carries many of the same risks as a real gun, *viz.,:* 1) subjecting the victim to great apprehension; 2) inhibiting the response of law enforcement agencies; and, 3) increasing the chance of a violent response. *Medved*, 905 F.2d at 940. Thus, because a toy gun is clearly a dangerous weapon for purposes of 18 U.S.C. § 2113(d), the question before this court is solely whether the toy gun must be brandished or displayed to the victim.

As the majority concedes, there is very little authority on this point. The Ninth Circuit, however, has dealt with the issue in the context of a real gun[2]. That court held as follows:

> The fact the [defendant] never had an opportunity to brandish or discharge his gun does not mean he did not "use" it. [Defendant] attempted to rob a bank and possession of a loaded gun was an integral part of the attempt. Moore "used" his gun, much as he used the gloves and ski mask. These items increased the likelihood of success; without them he probably would not have sailed forth.

*United States v. Moore*, 580 F.2d 360, 362 (9th Cir.1978).

The Ninth Circuit's rationale is solid and can be applied to the facts *sub judice.* In the instant case, defendant prepared the toy gun in such a manner as to have it closely resemble an actual weapon. He painted it black and added a piece of metal on the barrel for the sole purpose of making a duplicate of an actual weapon. Defendant went into the bank intent on brandishing the weapon and attempted to do so. His failure was due only to his own ineptitude. There was testimony that defendant opened his coat to imply he had the gun. Clearly then, under the *Moore* rational, the preparation and possession of the gun led to defendant's willingness to perpetrate the offense. Without the toy gun, he may never have attempted the robbery. His possession of the toy firearm was directly related to the bank robbery. *Id.* This is not a case where a defendant merely had a weapon in his possession unrelated to the underlying crime. Accordingly, it was the jury's prerogative to find that defendant had attempted to commit armed robbery. Although the majority seems to feel it involves a stretch of credulity to find that since the toy gun was never brandished it still emboldened defendant, it must be remembered that defendant attempted to brandish the gun. The only reason he did not was because of his own ineptitude. I cannot imagine why defendant would have constructed and attempted to display the gun if it would not have emboldened him to some extent thereby increasing the likelihood he perceived existed for success. Contrary to the majority, I am not willing to usurp the function of the jury by holding that a reasonable jury could not have found defendant "used" the gun.

The majority states that defendant did not brandish or display the gun. With that proposition I do not quarrel. However, the majority also proclaims that defendant did not allude to the gun. The record indicates

**2.** The Ninth Circuit dealt with this issue in a case brought pursuant to 18 U.S.C. § 924(c), however, for purposes of this discussion that *seems to me to be a distinction without a difference.* Moreover, although the majority contends that for purposes of § 924(c) the term "used" has a broader meaning, it seems to me the more logical approach would be to grant the term the same meaning under both statutes and then continue the analysis, *viz.,* did defendant's "use" of the gun assault or put in jeopardy the life of any person.

that defendant opened his jacket two separate times during the bank robbery. (Joint Appendix at 127). The first time he instructed the teller to hang up the telephone. The second time he placed his hand inside the jacket. In fact, defendant told his friend, Ezekiel Canterbury, that he attempted to pull out the gun, but that it got caught in his pants. It seems to me to be perfectly acceptable for the jury to infer that through this conduct, defendant was alluding to a gun. It must be remembered that it is not the province of this court to second guess the jury, but rather, to view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. *See United States v. Brown,* 959 F.2d 63, 67 (6th Cir.1992). To state that no rational jury could infer that defendant alluded to his toy gun stretches credulity.

Therefore, the next step in the analysis should be to determine whether defendant's use of the gun was an assault or placed anyones life in jeopardy. Viewing the facts, in a light most favorable to the prosecution [3], there is no doubt in my mind that the answer is that defendant did jeopardize the teller's well being. Through defendant's specific, albeit inept, actions in using the gun, the bank teller inferred that defendant had a gun. This is not so remarkable a conclusion when one considers that, indeed he did possess a convincing replica of a gun. It seems to me to be eminently reasonable for the bank teller to have experienced the same greater apprehension that this court articulated in *United States v. Medved,* 905 F.2d 935 (6th Cir.1990). The *Medved* court quite appropriately noted that such apprehension could "bring on heart attacks and other untoward medical consequences." *Id.* at 940. I would not limit the teller's reasonable responses to such a situation to her visual senses. She was entitled to, and could not but help, use all of her senses. To my way

of thinking, defendant's actions in using and alluding to the gun created a justifiable and reasonable fear in the teller's mind. Based upon this, a jury was certainly able to conclude that defendant had committed armed bank robbery. Accordingly, I would AFFIRM the conviction.

---

**3.** If I seem to overemphasize this standard of review, it is because the majority opinion has

done what I believe to be a *de novo* review under the guise of a deferential review.