RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0094P (6th Cir.)
File Name: 03a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

  *v.*      No. 02-1196

JULIAN TURNER,
   *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-80534—George C. Steeh, District Judge.

Argued: March 13, 2003

Decided and Filed: March 31, 2003

Before: COLE, GILMAN, and BRIGHT, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** David S. Steingold, DAVID S. STEINGOLD ASSOCIATES, Detroit, Michigan, for Appellant. David J. Debold, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** David S.

_____

[*] The Honorable Myron H. Bright, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Steingold, DAVID S. STEINGOLD ASSOCIATES, Detroit, Michigan, for Appellant. Patricia G. Gaedeke, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

 RONALD LEE GILMAN, Circuit Judge. Julian Turner appeals his sentence, imposed after he pled guilty to three counts of tax fraud and one count of contempt of court. He raises the following four arguments on appeal: (1) the district court erred when it enhanced his sentence for obstructing justice, (2) the district court erred in grouping the contempt charge with the fraud charge for the purpose of calculating his sentence pursuant to the Sentencing Guidelines, (3) the district court erred in denying him a downward departure for accepting responsibility for his actions, and (4) his original counsel rendered ineffective assistance. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

 Turner was indicted on February 24, 2000 for conspiracy to defraud the United States and for making fraudulent claims against the United States. He was released on bond. After failing to appear for a court proceeding on July 31, 2000, his pretrial bond was revoked and the district court issued a bench warrant for his arrest.

 Turner appeared in court the following day. He claimed that he had been unable to appear the day before because he lacked transportation to the courthouse, and pleaded with the court to allow him to remain free on bond so that he would not be terminated from his job and could continue to satisfy his child-support obligations. The district court reinstated his bond, but found Turner in contempt for failing to appear and imposed a fine of $250.

Further investigation by the Pretrial Services Office revealed that Turner had been fired from his job several weeks before the July 31, 2000 hearing date and that Turner had never made any child-support payments. On August 2, 2000, the district court issued an order to show cause why Turner's bond should not be revoked because of his false statements to the court.

Turner appeared in court on August 3, 2000 in response to the show-cause order. A pretrial services officer testified at the hearing that one of the conditions of Turner's initial release on bond was that he clear up a 1999 warrant concerning a state-court probation violation. As of August 3, 2000, however, Turner had failed to do so. In addition, the pretrial services officer testified that a state court had issued a civil warrant for Turner's nonpayment of child support. The district court found that Turner had lied about making child-support payments, lied about the status of his employment, and failed to clear up the outstanding state-court warrant. Accordingly, the district court ordered Turner detained until trial.

On January 9, 2001, Turner pled guilty to Counts 35, 36, and 37 of the indictment, which charged him with making fraudulent claims against the United States and aiding and abetting in making such claims. Upon accepting the guilty plea, the court released Turner until the sentencing hearing. The release was conditioned on Turner complying with various restrictions, including a curfew.

A probation officer conducted a presentence interview with Turner on January 17, 2001. During the course of that interview, Turner told the probation officer that he had a law degree and was licensed to practice law in California. While incarcerated, he also represented to a fellow inmate that he was a licensed attorney, and he accepted money for providing legal services to the inmate. Turner further told the officer that he had legally changed his name in the early 1980s to Darrylle Kevianne, but that Dallas County, Texas, where he allegedly changed his name, does not keep records of name

changes. After investigating the matter, the officer discovered that Dallas County does in fact keep such records, that Turner did not change his name, and that Turner had never attended law school.

By March 1, 2001, Turner had violated his curfew on at least three separate occasions. This caused the court to cancel Turner's bond and issue an arrest warrant for the bond violations. Turner was arrested pursuant to the warrant on March 7, 2001.

The grand jury returned a superseding indictment on May 23, 2001, charging Turner with three counts of contempt of court. One of the three contempt counts, Count 40, related to Turner providing false information to the pretrial services officer assigned to his case, as well as for violating his bond conditions by staying out after his curfew and committing a criminal act (practicing law without a license and falsely asserting that he was a notary public).

Turner filed a motion on April 18, 2001 to appoint new counsel. He filed another motion on July 16, 2001 to withdraw his guilty plea to the original indictment, asserting that he was innocent of the criminal charges and that he had entered into the plea "only to secure his release from jail." After the court appointed Turner new counsel, Turner pled guilty to Count 40 of the superseding indictment. The court never ruled on the motion to withdraw the guilty plea.

Turner was sentenced to a concurrent sentence of 60 months' imprisonment on Counts 35 and 36, a consecutive sentence of 34 months' imprisonment on Count 37, and a consecutive sentence of 6 months' imprisonment on Count 40, for a total sentence of 100 months' imprisonment. The total sentence reflects an enhancement for obstruction of justice based upon Turner misrepresenting himself as an attorney and telling "lies . . . to the Court that led the Court to grant bond [and] to reinstate the bond, [and] many misrepresentations . . . of his background [and] information . . . to the probation officer."

## II. ANALYSIS

### A.  Enhancement for obstruction of justice

Turner raises three issues regarding the enhanced sentence that he received for obstructing justice. First, he maintains that the enhancement was unlawful because his allegedly obstructive conduct was irrelevant to the crime for which he was sentenced. His second contention is that the district court erred in applying the enhancement despite evidence that he had a diminished capacity and/or was insane prior to sentencing. Finally, Turner argues that the enhancement violated the Double Jeopardy Clause of the Fifth Amendment.

#### 1. *Relevance of Turner's obstructive conduct to the crime for which he was sentenced*

We will "overturn a court's factual findings in regard to the Sentencing Guidelines only if they are clearly erroneous." *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002). Section 3C1.1(A) of the Sentencing Guidelines provides that a convicted defendant may receive a sentencing enhancement for obstructing justice if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." Such obstructive conduct, however, must be "related to the defendant's offense of conviction and any relevant conduct; or a closely related offense." U.S. Sentencing Guidelines Manual § 3C1.1(B) (2002) (enumeration omitted). Moreover, it must be directed at a judge or "a probation officer in respect to a presentence or other investigation for the court." *Id.* § 3C1.1, cmt. n.4(f),(h).

Turner argues that he should not have received an enhancement for obstructing justice because "the factual basis for that enhancement was from a wholly unrelated matter." We disagree. The commentary to the Sentencing Guidelines provides guidance regarding the relevant-matter requirement: "Material evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information

that, if believed, would tend to influence or affect the issue under determination." *Id.* § 3C1.1, cmt. n.6.

Here, contrary to Turner's protestations, the district court did not enhance Turner's offense level solely because he misrepresented himself as a licensed attorney. The enhancement was also based on his lying to the district court, which caused the court to release Turner on bond and then to cancel the bond, as well as lying to the probation officer conducting the presentence investigation.

As the Eighth Circuit has recognized, lies made by a defendant to a judge that are material to whether pretrial release should be revoked are material to "the issue under determination." *United States v. O'Dell*, 204 F.3d 829, 837 (8th Cir. 2000) ("Here, the 'issue under determination' was whether [the defendant's] pretrial release should be revoked. [The defendant's] perjurious testimony had the potential to influence or affect that determination. Enhancing [the defendant's] offense level was therefore proper."). Turner's lies regarding his employment status and history of child-support payments led the district court to release Turner on bond, and thus affected the issue under determination.

Whether Turner's purpose was to interfere with the investigation or prosecution when he misrepresented himself as an attorney and erroneously informed the probation officer that he had legally changed his name in Texas is unclear. *See United States v. Perry*, 991 F.2d 304, 312 (6th Cir. 1993) (stating that the Sentencing Guidelines and commentary require the government to show that the obstructive conduct "was done with the purpose of interfering with [the] investigation or prosecution of the crime"). His lies to the district court regarding his employment status and history of child-support payments, on the other hand, were purposeful and directly related to the investigation and prosecution of the crime, and thus support the sentencing enhancement for obstructing justice.

### 2.   *Diminished capacity/insanity*

Turner also alleges that the district court erred in failing to consider the evidence of his diminished psychological capacity when it enhanced his sentence for obstructing justice. According to Turner, he should not have received the enhancement because he did not have the mental capacity to engage in such willful conduct.

The provision of the Sentencing Guidelines that concerns the obstruction-of-justice enhancement speaks in terms of conduct that is "willful." U.S. Sentencing Guidelines Manual § 3C1.1. Thus, if Turner had proved that he lacked the mental capacity to willfully obstruct justice, then the enhancement would not have been applicable to him.

Tuner presented evidence, in the form of a psychological report by Dr. Michael Abramsky, that "his capacity is indeed diminished to appreciate in a responsible manner what he was doing and the consequences of his own behavior." Dr. Abramsky specifically made a finding that the lies that Turner told to the probation officer are "not lies that entail any particular gain for him."

The report, however, did not account for the lies that Turner told to the court, which formed the basis of the obstruction-of-justice enhancement. With respect to this conduct, the district court witnessed Turner's testimony firsthand, and it concluded that he had willfully lied. The district court was in the best position to determine the "willfulness" of Turner's lies, despite his claim of diminished capacity. Because Turner did not proffer evidence showing that his diminished mental capacity affected his ability to willfully obstruct justice when he lied to the court in order to remain free on bond, we conclude that the district court did not err in determining that Turner's conduct warranted an enhancement for obstructing justice. *See Perry*, 991 F.2d at 311 ("We review an enhancement under the Guidelines for clear error.").

### 3.   *Double jeopardy*

Turner's final argument regarding the sentencing enhancement is that his sentence violates the Double Jeopardy Clause of the Fifth Amendment. The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. It "protects against a second prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense." *Palazzolo v. Gorcyca*, 244 F.3d 512, 516 (6th Cir. 2001).

Turner argues that his sentence violates the Double Jeopardy Clause because he received the sentencing enhancement for obstructing justice due to his pleading guilty to the contempt charge (Count 40). In other words, he alleges that he was punished twice for the same conduct.

As the government points out, this is a "superficially plausible argument," but one that does not withstand close scrutiny. An examination of the record reveals that the contempt charge to which Turner pled guilty and the sentencing enhancement were based on different conduct. The sentencing enhancement was justified, at least in part, on the basis of Turner's lying to the district court at his bail hearings. On the other hand, the contempt charge was based upon Turner's disobeying the court's orders by providing false information to the pretrial services officer and by violating various conditions of his bond. Turner's conduct that formed the basis for the contempt charge, therefore, had nothing to do with the conduct that led to his sentencing enhancement.

In his reply brief, Turner further argues that if his lying to the court at his bond-revocation hearing led to the sentencing enhancement, then his constitutional right not to be subjected to double jeopardy was violated because he was punished twice for such conduct — his bond was revoked and he received a sentencing enhancement. The revocation of bond, however, "is not punishment within the meaning of the Double Jeopardy Clause." *Simpson v. United States*, No. 95-

2290, 1996 WL 250450, at *2 (6th Cir. May 10, 1996); *see also United States v. Dixon*, 509 U.S. 688, 729-30 (1993) (White, J., concurring in part and dissenting in part) (commenting that a "revocation of bail . . . would raise no double jeopardy problem"); *United States v. Grisanti*, 4 F.3d 173, 175-76 (2d Cir. 1993) (holding that double jeopardy does not attach at a defendant's bail-revocation hearing). Accordingly, we conclude that Turner's sentence did not violate the Double Jeopardy Clause.

## B.  Grouping

Turner's second claim on appeal is that the district court erred when it grouped the contempt charge with the fraud charges for the purpose of calculating his sentence pursuant to § 3D1.2 of the Sentencing Guidelines.  This Guideline provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group."  As the government points out, however, Turner cannot raise this issue on appeal because he withdrew his objection to such grouping in the district court. *United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001) ("A defendant waives the right to appeal an application of the Sentencing Guidelines when he fails to object in the trial court. . . .  [A] defendant must first present the claim in the district court before we can entertain the alleged misapplication of the Guidelines on appeal.") (internal quotation marks omitted).  We therefore decline to consider this issue.

## C.  Downward departure

Turner's third claim on appeal is that the district court erred in not finding that he had accepted responsibility for his criminal actions.  He argues that he should have received a downward departure for the acceptance of responsibility pursuant to § 3E1.1 of the Sentencing Guidelines.

Section 3E1.1 provides that the offense level shall be decreased by two levels if the "defendant clearly demonstrates acceptance of responsibility for his offense."  The official

commentary to the Sentencing Guidelines fleshes this concept out as follows:

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction . . . will constitute significant evidence of acceptance of responsibility. . . . However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.

*Id.* § 3E1.1, cmt. n.3.  "Because it is generally a question of fact, the trial court's determination of whether a defendant has accepted responsibility normally enjoys the protection of the 'clearly erroneous' standard, and will not be overturned unless it is without foundation." *United States v. Roberts*, 243 F.3d 235, 240-41 (6th Cir. 2001).

Turner contends that he was entitled to receive a downward departure for accepting responsibility because he pled guilty. There are two problems, however, with his argument.  First, the commentary to the Sentencing Guidelines makes clear that a "defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."  U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.3.  Second, Turner attempted to withdraw his guilty plea twice, claiming that he did not commit the acts alleged in the charges. Turner's counsel at oral argument, however, suggested that Turner never maintained his innocence as to counts 35-37, as opposed to counts 1-34.  But Turner's trial-court brief in support of his motion to set aside his guilty plea clearly states that the "defendant has asserted his innocence to Counts 1-35." Turner therefore did not accept responsibility within the meaning of the Sentencing Guidelines.

Turner's alternative argument is that, despite the fact that he received an enhancement for obstructing justice, his situation is an "extraordinary case" that justifies a downward departure. *See* U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.4 ("Conduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates that the defendant has not

accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."). "[T]he defendant [bears the] burden to demonstrate that his case is 'extraordinary' such that he deserves the downward adjustment." *United States v. Gregory*, 315 F.3d 637, 641 (6th Cir. 2003).

Turner cites two reasons that allegedly make his case extraordinary: his deteriorating mental health and his contention that his lies were irrelevant to the crimes for which he was sentenced. He has not advanced an argument, however, to explain how his mental health is related to his accepting responsibility for his actions. Furthermore, as discussed above, his misstatements were highly relevant to the crimes with which he was charged because they impacted whether he would be released on bond. He therefore failed to meet his burden of proving that his case was so extraordinary as to warrant a downward departure for accepting responsibility for his criminal actions.

## D.  Ineffective assistance of counsel

Turner's final contention on appeal is that his original counsel was constitutionally deficient because his counsel did not seek a criminal-responsibility assessment of Turner and did not attend Turner's presentence interview with the probation officer. Ineffective-assistance-of-counsel claims, however, are "generally not heard on direct review." *United States v. Galloway*, 316 F.3d 624, 634 (6th Cir. 2003). They are typically raised in habeas petitions under 28 U.S.C. § 2255. "[F]or the most part, the record before us will be insufficient to enable us to entertain the claim, because a successful claim necessarily requires a showing of prejudice, as enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Id.*

The record in the present case has not been adequately developed to consider Turner's ineffective-assistance claim. Accordingly, we decline to address this issue on direct appeal.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.