**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0008n.06
Filed: January 4, 2006

**No. 04-6255**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA,**

 **Plaintiff-Appellee,**

**v.**

**SAMUEL K. WILDER,**

 **Defendant-Appellant.**

               /

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE**


**BEFORE:**   **SILER, CLAY and ROGERS, Circuit Judges.**

 **CLAY, Circuit Judge**. On April 3, 2003, Defendant Samuel K. Wilder pled guilty to being

a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), armed carjacking in violation

of 18 U.S.C. § 2119, and brandishing a firearm in relation to a crime of violence in violation of 18

U.S.C. § 924(c)(1)(A)(ii). Defendant was sentenced to 346 months imprisonment, and 5 years

supervised release as an armed career criminal on September 17, 2004. Defendant appeals here

claiming that the district court erred in denying his motion to withdraw his guilty pleas; violated his

Sixth Amendment rights in sentencing him pursuant to then mandatory sentencing guidelines; erred

in sentencing Defendant as an armed career criminal; erred in applying U.S.S.G. § 4B1.4(b)(3)(A);

and erred in withholding application of U.S.S.G. § 3E1.1, Acceptance of Responsibility. For the

reasons set forth below, we **AFFIRM** Defendant's convictions, but **VACATE** Defendant's sentence and **REMAND** to the district court for resentencing.

## I. BACKGROUND

On June 7, 2002, Defendant stole a Ford Taurus from a car dealership in Harrogate, Tennessee, which Defendant had been allowed to take for a test drive. On June 8, 2002, Defendant drove the stolen Taurus to the home of a friend, Carl Douglas Ely, in Lee County, Virginia. Defendant pulled a .44 Black Ruger on Ely, and drove Ely out into the countryside where Defendant robbed Ely of $40. Defendant then returned to Ely's home, where Defendant ransacked the residence and stole an additional $800 that Ely had hidden there.

On June 14, 2002, Defendant drove the Ford Taurus to Chattanooga, Tennessee, where Defendant went to the residence of another acquaintance, Wallace Gould. Gould agreed to go drinking with Defendant. Defendant drove Gould to an area off Lake Resort Terrace in Chattanooga and forced him from the car at gunpoint. Defendant robbed Gould and left him.

On June 18, 2002, Defendant drove the stolen Taurus to a Toyota dealership in Chattanooga where Defendant asked salesman Larry Gravitt to test drive a four cylinder truck. Gravitt agreed and accompanied Defendant on a test drive. Upon returning to the dealership, Defendant asked to drive a V-6 model truck, stating that he [Defendant] wanted to show the truck to his wife. Again Gravvitt agreed, but before leaving the car lot, Defendant transferred a cardboard box from the stolen Taurus to the bed of the truck, stating that the box contained something that he [Defendant] needed to take to his wife. Defendant drove Gravitt to the same area of Lake Resort Drive where Defendant had taken Gould days before. Defendant pulled off the road, stating that he needed to

2

relieve himself. Gravitt also exited the vehicle to smoke a cigarette. Upon his return, Defendant went to the bed of the truck and removed a .44 caliber Ruger pistol from the box. Defendant pointed the gun at Gravitt, and ordered him to get to his knees and put his face in the dirt. Defendant then ordered Gravitt to surrender all his cash, credit cards, and PIN numbers and warned that he would return and blow Gravitt's head off if the numbers were incorrect. Defendant told Gravitt that he had someone riding by to make sure that Gravitt stayed where he was told. After also taking Gravitt's cell phone, Defendant drove off in the Toyota truck. Defendant was apprehended by the Chattanooga police department after a short chase. A .44 caliber revolver was recovered from the vehicle.

On June 25, 2002, a grand jury charged Defendant in a seven count indictment in the United States District Court for the Western District of Tennessee. On April 3, 2003, Defendant pled guilty to the last three counts of the seven count indictment, namely: being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count five), armed carjacking in violation of 18 U.S.C. § 2119 (count six), and brandishing a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (count seven). Sentencing was set for July 25, 2003.

The presentence report ("PSR") was disclosed to both parties on June 27, 2003 and revised July 17, 2003. The PSR recommended a total offense level of 34, pursuant to U.S.S.G. 4B1.4(b)(3)(A), and a criminal history category of VI, pursuant to U.S.S.G. § 4B1.4(c)(2). The federal defender filed objections to the PSR on October 3, 2003. Defendant subsequently moved twice, once in July 2003 and again in October 2003, to reschedule his sentencing hearing. Both motions were granted. Sentencing was rescheduled for January 9, 2004. On March 23, 2004,

Defendant moved for a withdrawal of his guilty plea. On April 2, 2004 Defendant filed a motion for downward departure from his sentencing guideline range, based upon what he described as his involuntary substance abuse addiction. The district court held an evidentiary hearing on Defendant's motion for withdrawal of guilty pleas on April 9, 2004, which the judge denied on May 14, 2004.

The sentencing hearing was finally held on September 17, 2004. The district court adopted the recommendations in the PSR, setting Defendant's base offense level at 34, based on his status as an armed career criminal, with a criminal history category VI. Defendant's guidelines range was 262-327 months, with an additional 84 months consecutive for count seven, totaling 346-411 months. Defendant was sentenced to a total of 346 months imprisonment, and five years supervised release. Defendant filed this timely appeal on September 20, 2004.

## II. DISCUSSION

Because we can find no error in the district court's denial of Defendant's motion to withdraw guilty pleas, sentencing Defendant as an armed career criminal, calculation of Defendant's base offense level, or denial of Defendant's acceptance of responsibility, we affirm the district court on all accounts but remand for resentencing in light of the now advisory sentencing guidelines.

### A.

Denial of a defendant's motion to withdraw guilty plea is reviewed for an abuse of discretion. *United States v. Hunt,* 205 F. 3d 931, 936 (6th Cir. 2000) (citing *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998)); *United States v. Bashara*, 27 F.3d 1174, 1180 (6th Cir. 1994), *superseded on other grounds by statute*; *United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). To find an abuse of discretion, this Court must form "a definite and firm conviction that the

trial court committed a clear error of judgment." *United States v. City of Warren*, 138 F.3d 1083, 1095 (6th Cir. 1998).

The district court did not abuse its discretion in denying Defendant's motion for withdrawal of his guilty pleas. Rule 11 (d) of the Federal Rules of Criminal Procedure governs the withdrawal of a guilty plea. The rule states in pertinent part that "[a] defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentences if . . . the defendant can show a fair and just reason for requesting withdrawal." Fed. R. Crim. P. 11(d)(2005); *United States v. Mader*, 251 F.3d 1099, 1105 (6th Cir. 2001) (stating that defendant has the burden of showing a fair and just reason warranting withdrawal of the plea). "Courts have noted that the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.'" *Bashara*, 27 F. 3d at 1181.

In *Bashara*, we articulated a seven factor test for determining whether a defendant has shown a "fair and just reason." Those factors are: (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* Here, the district court did not abuse its discretion in finding that all seven *Bashara* factors weigh against Defendant's motion to withdraw his guilty plea.

We consider the length of time between the plea and the filing of the motion to withdraw to be one of the strongest factors, and have upheld denials of motions to withdraw where the time period was considerably less than a year. *See, e.g., United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (upholding a denial where the defendant waited seventy-seven days to file his motion); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (upholding withdrawal where there was a fifty-five day time lapse); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (stating that a sixty-seven day delay was strongest factor supporting district court's denial of defendant's motion to withdraw). In the present case, Defendant waited too long before seeking to withdraw his guilty plea. Defendant entered his guilty plea before the court on April 3, 2003. Defendant did not move to withdraw his guilty plea until a year later in April 2004. This was an extremely long and unreasonable period of delay, far beyond what this Court has found acceptable in the past. The long delay strongly supports the district court's denial of the motion.

Defendant did not proffer a valid reason for his extremely long delay. A defendant's reasons for filing a motion to withdraw will be more closely scrutinized when he has delayed his motion for a substantial length of time. *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987). Defendant claims that his decision to plead guilty was "made with unsure heart and confused mind," but that he did not know how to deal with the problem, and that he was having communication problems with his attorney. Defendant primarily contends, however, that he sought to change his

plea because he [Defendant] believes that his drug addiction provides him with an insanity defense.

On April 9, 2004 the district court held an evidentiary hearing on Defendant's motion for withdrawal of guilty plea. The court found that Defendant was not credible and denied the motion. The court was particularly suspicious of the timing of Defendant's motion for withdrawal of guilty plea, noting that Defendant waited until roughly one month before facing a prison term of 294 to 396 months before giving his first indication to the court that he wanted to withdraw his guilty plea. The district court believed, and we agree, that one of the reasons for Defendant's delay in seeking withdrawal of his guilty plea was that Defendant could no longer postpone his sentence hearing. Moreover, the fact that Defendant apparently concocted an insanity defense in between the time that he pled guilty and the time that he moved to withdraw his plea, is also not a valid reason for the lengthy delay.

Defendant has also not maintained his innocence. "When a movant has 'consistently maintained his innocence,' this Court will weigh such statements in support of the withdrawal of his guilty plea." *United States v. Fofana*, No. 01-1314, 2002 WL 31520619, at *4 (6th Cir. Nov. 8, 2002) (quoting *United States v. Triplett*, 828 F.3d at 1197). However, where a defendant previously knowingly and voluntarily pled guilty and then later declares, "I have always denied my guilt of the charges," the "weight given his present profession of innocence must be balanced in its historical context." *Id.*

Defendant pled guilty on April 3, 2003. Defendant was apprised of his rights, and the district court judge inquired numerous times as to whether or not Defendant understood what it meant to

7

plead guilty. Defendant moved several times for postponement of his sentencing hearing, but Defendant never asserted his innocence. Defendant does not deny that he committed the crimes, and does not assert that he is factually innocent, but that he is entitled to assert a diminished capacity defense. Defendant claims that he was insane at the time of the commission of the crimes because he was addicted to and under the influence of a number of drugs. The district court reasoned that Defendant could not raise voluntary intoxication as part of an insanity defense, and that Defendant would have to prove that his substance abuse was involuntary in order to raise this defense. Since Defendant did not assert his innocence, and the district court also properly found that Defendant would not be permitted to raise an insanity defense on the bases of voluntary intoxication, the third *Bashara* factor also weighs against Defendant's motion to withdraw his guilty plea.

The circumstances underlying Defendant's entry of the guilty plea suggest that Defendant's plea was knowing and voluntary. The district court stated that "nothing unusual occurred during Defendant's guilty plea." The district court judge carefully explained the consequences of a guilty plea and asked Defendant repeatedly if Defendant understood what he was doing; the court asked whether Defendant was in fact guilty, and whether Defendant had discussed the matter with his attorney. Defendant answered all of the questions in the affirmative, and the court did not "detect any hesitancy or confusion or indecisiveness on Defendant's part." Therefore, the district court properly found that the fourth factor weighs against granting Defendant's motion to withdraw his guilty plea.

Defendant's background also weighs against allowing Defendant to withdraw his guilty plea. The record shows that Defendant graduated with a 3.751 GPA from the University of Tennessee at

8

Chattanooga. The district court believed that "[D]efendant's demonstrated academic success and ability to understand complex matters suggest that he was not confused or uncertain when he entered his guilty plea." We agree with that conclusion. Furthermore, Defendant's exposure to and experience with the criminal justice system weigh against allowing Defendant to withdraw his guilty plea. The PSR revealed that Defendant received felony convictions in 1984, 1990, and 1991. The district court correctly concluded that this level of experience with the criminal justice system "suggests that he knew the consequences and potential benefits associated with entering a guilty plea."

Finally, the district court did not consider potential prejudice to the government that would result if Defendant were allowed to withdraw his guilty plea because the district court had already decided that it would not be granting the requested relief. Since we agree that all the other factors weigh against granting Defendant's motion to withdraw his guilty plea, we also agree that it was not necessary for the district court to weigh this factor.

Therefore, we hold that the district court did not err in denying Defendant's motion to withdraw his guilty plea.

B.

The district court properly sentenced Defendant pursuant to the Armed Career Criminal Statute. Defendant argues that the district court violated his Sixth Amendment rights in determining that the underlying conduct for Defendant's two prior convictions constituted "different occasions," and that the district court incorrectly found that Defendant's wanton endangerment conviction constituted a § 924(e) predicate offense. Neither of these arguments is persuasive.

Section 922(g) reads in pertinent part: "It shall be unlawful for any person – who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate commerce . . . or possess . . . any firearm or ammunition." 18 U.S.C. § 922 (g)(1). Section 924 (e) reads:

> In the case of a person who violates section 922 (g) of this title and has three previous convictions by any court referred to in section 922 (g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1).

Defendant's PSR reveals that Defendant has four predicate felony offenses: (1) wanton endangerment, a first degree felony; (2) first degree robbery; ( 3) another first degree robbery; and (4) aggravated robbery. As a result of those four predicate convictions, the probation officer determined, and the district court agreed, that Defendant qualified as an armed career criminal pursuant to § 924(e)(1). Defendant claims that the district court erred in determining that his robbery offenses were all committed on "different occasions" for the purpose of § 924(e)(1) and also erred in determining that the wanton endangerment conviction qualified for purposes of the statute.

First of all, we do not believe that the district court erred in determining that Defendant's predicate offenses for purposes of § 924 (e)(1) were in fact "different occasions." "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)). However, this Court considers the prior-conviction exception still good law, *United States*

10

*v. Gatewood*, 230 F.3d 186 (6th Cir. 2000), and has specifically held that "the determination by a district court that prior convictions exist and were committed on 'different occasions,' are so intimately related that the 'different occasions' requirement of § 924 (e) sufficiently comes within the exception in *Apprendi*." *United States v. Powers*, 129 Fed. Appx. 942, 2005 WL 977136 at *4 (6th Cir. April 28, 2005) (quoting *United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004)); *see also, United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005) ("There is no language in *Booker* suggesting that the Supreme Court, as part of its remedial scheme adopted in that case, intended to alter the exception to *Apprendi* allowing district courts to consider the fact and nature of prior convictions without submitting those issues to the jury.").

Therefore, there was no Sixth Amendment violation in connection with the judicial fact-finding that the district court engaged in to determine that Defendant's four prior convictions did apply for purposes of his conviction pursuant to the Armed Career Criminal Act. The district court was permitted to make the determination that the three robbery offenses did occur on different occasions.

Defendant further argues, however, that the district court erred by "engaging in factual research that extends well beyond the limited documents authorized by the Supreme Court in *Shepard*." (Defendant's Br. at 23-25). The question presented in *Shepard* was "whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary." *Shepard* v. *United States*, 125 S.Ct. 1254, 1257 (2005). The *Shepard* Court held that, " it may not, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory

definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* Although the holding in *Shepard* involved only prior burglaries, the Court's holding in such cases "covers other predicate . . . offenses under the Act as well." *United States v. Sanders*, 404 F.3d 980, 988 (6th Cir. 2005) (quoting *Shepard*, 125 S. Ct. at 1257, n.2) (internal citations and quotations omitted).

We do not believe that the district court engaged in factual research beyond what was authorized by the Supreme Court in *Shephard*. In the present case, Defendant first argued that his prior conviction for "wanton endangerment" was not a crime of violence. In concluding that the predicate charge was in fact a crime of violence, the district court reviewed the charging statute and found that the statute by its terms "proscribes . . . conduct presenting a serious potential risk of physical injury." (J.A. at 236-37) The *Shepard* Court explicitly allowed for examination of the charging statute; therefore there was no *Shepard* violation in that instance.

Defendant further argues that the district court erred by "considering facts outside the scope of the charging documents and the factual bases contained in the plea agreements," in rejecting Defendant's argument that two of the robberies occurred on different occasions. The record reveals, however, that in making his determination, the district court judge considered the information provided in the PSR. The PSR revealed the times, dates, and locations of all the crimes, including the two robberies at issue. Based upon that information, the district court concluded that the "two offenses committed against different victims at different locations and at different times constitute two distinct predicate felonies." (J.A. at 238) There is no evidence to suggest that the district court judge assumed facts outside of what was allowed; therefore there was no reversible error.

## C.

Next is Defendant's contention that his base offense level under the armed career criminal provision was erroneously set at 34 rather than 33 in light of Defendant's § 924(c) conviction. The district court rejected this argument and found that § 4B1.4(b)(3)(A) did in fact apply to Defendant. Defendant argues that § 4B1.4(b)(3)(B) should have been applied instead. We agree with the district court.

Section 4B1.4(b)(3)(A) provides that if the firearm illegally possessed in the § 922(g) conviction was used in a crime of violence, then the offense level for an armed career offender is 34, rather than the level 33 that would otherwise apply under § 4B1.4(b)(3)(B). Defendant argues that this application of § 4B1.4(b)(3)(A) constitutes impermissible double counting because Application Note 4 of U.S.S.G. § 2K2.1, which applies to § 924(c) convictions, provides that "[i]f a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense."

The district court correctly concluded, however, that Defendant's base offense level enhancement was based on the armed career criminal provision of § 4B1.4 and not on a specific offense characteristic. Thus, there was no double counting. *See United States v. Smith*, 196 F.3d 676, 682 (6th Cir. 1999) quoting *United States v. Sanders*, 982 F.2d 4, 7 (1st Cir. 1992) ("Unlike, for example, the guidelines for aggravated assault (§ 2A2.2), kidnaping (§ 2A4.1), or drug trafficking (§ 2D1.1) which list use or possession of a firearm as a 'specific offense characteristic' raising the offense level, the felon in possession guidelines (§§ 2K2.1, 4B1.4) do not designate

13

possession or use of a single weapon as a 'specific offense characteristic' raising the offense level. Rather, possession of a weapon is an element of the crime. And section 4B1.4(b)(3)(A) where use is considered is not denominated a 'specific offense characteristic.' Consequently, Application Note 4 does not assist defendant."). Therefore, we do not believe that the district court engaged in impermissible double counting in setting Defendant offense level at 34 rather than 33.

D.

This Court reviews constitutional challenges that have been preserved at trial *de novo*. *U.S. v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003); *United States v. Jones*, 399 F.3d 640, 649 (2005)(stating that the Court reviews *de novo* the question of whether the district court violated Defendant's rights under *Booker*).

Even though the district court did not err in setting Defendant's base offense level at 33, the district court did err in sentencing Defendant pursuant to the then mandatory Sentencing Guidelines, and therefore Defendant's sentence should be vacated and the case remanded for resentencing pursuant to *Booker*. It is now well-settled under *Booker* that it is error for the district court to sentence defendants under a mandatory guideline regime. *United States v. Barnett*, 398 F.3d 516, 525 (2005). Since Defendant was sentenced under what the district court believed to be mandatory guidelines, Defendant's sentence should be vacated.

Where Defendant preserved his argument that the district court erred in applying the enhancement, this Court must determine whether any error in sentencing was harmless. *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005). Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless – *i.e.*, "did

not affect the district court's selection of the sentence imposed." *Id*. (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).

We cannot be certain from the evidence in the record that the error committed in sentencing Defendant pursuant to mandatory guidelines was harmless. The district court sentenced Defendant to 346 months imprisonment. The record does not contain "clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime." *Hazelwood*, 398 F.3d at 801; *United States v. Webb*, 403 F.3d 373, 384-85 (6th Cir. 2005). While the district court judge referred numerous times to the fact that he was sentencing Defendant for the purpose of protecting society, the judge never clearly indicated that Defendant would not receive a lower sentence had he considered the guidelines advisory rather than mandatory. Thus, we hold that Defendant's sentence should be vacated and remanded back to the district court for resentencing pursuant to *Booker*.

E.

A district court's decision to adjust a defendant's sentence based on acceptance of responsibility is a factual determination reviewed for clear error. *United States v. Farrelly*, 389 F.3d 649, 656 (6th Cir. 2004).

We find that the district court did not err in denying Defendant's acceptance of responsibility. "A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, Application note 3 (2004). This court will not overturn the denial of an acceptance of responsibility "unless it is without foundation." *United States v. Turner*, 324 F.3d 456, 462 (6th Cir. 2003) (quoting *United States v. Roberts*, 243 F.3d 235,

241 (6th Cir. 2001). A defendant has the burden of proving acceptance of responsibility by a preponderance of the evidence. *United States v. Gilbert*, 173 F.3d 974, 979 (6th Cir. 1999) (no clear error to deny acceptance where defendant pleaded guilty but district court found he perjured himself at sentencing hearing); *see also United States v. Van Shutters,* 163 F.3d 331, 340 (6th Cir. 1998) (although defendant had right to raise legal challenge at trial, acceptance was denied because defendant demonstrated no remorse and was a "hardened criminal").

The district court based its denial of acceptance of responsibility on Defendant's own behavior. The district court stated,

> We have a defendant here who indicated that he wished to plead guilty, appeared before the Court and entered a guilty plea, but then subsequently filed a motion to withdraw from his guilty plea, took the stand and testified. The Court believes that his testimony during the course of that hearing does not manifest an acceptance of responsibility and it does not amount to what the guidelines require, that is, that a defendant clearly demonstrate acceptance of responsibility.

(J.A. at 240)

The district court was in a position to determine Defendant's sincerity and credibility, and ultimately determined that Defendant did not demonstrate acceptance of responsibility. We decline to substitute our judgment for that of the district court, therefore we uphold the district court's denial of acceptance of responsibility.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's convictions, but **VACATE** Defendant's sentence and **REMAND** for resentencing pursuant to *Booker*.