**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0104n.06**
**Filed: February 9, 2006**

**No. 05-1200**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MICHELLE RENEE BOGAN, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KENNEDY, COOK, and GRIFFIN, Circuit Judges.

PER CURIAM. Michelle Bogan pleaded guilty to one count of financial institution fraud, in violation of 18 U.S.C. § 1344(2), and one count of identity theft, in violation of 18 U.S.C. § 1028(a)(7). At sentencing, the district court denied Bogan a two-level reduction of her offense level for acceptance of responsibility pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1(a). Because the district court did not clearly err, we affirm.

I.

Bogan and her co-defendant, Delphine Coleman, entered the Steelcase Employee Credit Union (the "bank") in Wyoming, Michigan, and opened an account in the name of Sonya Stubbs, Coleman's mentally-handicapped neighbor. To accomplish this, Bogan simply introduced Coleman (posing as Stubbs) to Erica Curry, an employee of the bank and an acquaintance of Bogan. Relying

on Bogan's introduction, Curry, in violation of bank policy, did not require Coleman to produce photo identification before opening the account in Stubbs's name.

Curry then granted a car loan, also in Stubbs's name, to Defendants. Coleman signed the loan papers, using Stubbs's name, and Bogan (falsely) attested to Coleman's identity and signature. Defendants then used the proceeds of the loan to purchase a car. The following week Defendants obtained another loan from Curry and used the proceeds to purchase a truck. Bogan took title to both vehicles in her name. During this same time period Bogan also used the account to cash several forged money orders.

A few weeks later local police interviewed Ms. Stubbs and determined that she never authorized Bogan or Coleman to use her identity. A federal grand jury then indicted Bogan, after which she agreed to plead guilty and to fully cooperate with the government.[1]

As part of the presentence investigation process, United States Probation Officer Jeremy Williams interviewed Bogan twice. In his final presentence report (the "PSR"), Williams did not recommend a reduction of Bogan's offense level for acceptance of responsibility, noting that, "[a]lthough the defendant entered a guilty plea to the offense, she continues to deny ever using Ms. Stubbs' identity. She stated she was an unknowing participant in the instant offense." Bogan objected to this portion of the PSR. The district court, after conducting a hearing, denied the

---

[1]Coleman also agreed to plead guilty in a similar agreement.

objection and sentenced Bogan in accordance with the recommendations in the PSR. Bogan now

appeals, arguing for resentencing based upon a reduced offense level.

## II.

A "district court's determination regarding acceptance of responsibility must be sustained

unless clearly erroneous." *United States v. Angel*, 355 F.3d 462, 476 (6th Cir. 2004) (citing *United*

*States v. Webb*, 335 F.3d 534, 537-39 (6th Cir. 2003)); *see* U.S. Sentencing Guidelines

Manual § 3E1.1 cmt. n.5. ("The sentencing judge is in a unique position to evaluate a defendant's

acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled

to great deference on review."). Applying this standard we must uphold the district court's decision

unless, after reviewing the evidence, we are "left with the definite and firm conviction that a mistake

has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

## III.

The Guidelines provide that "[i]f the defendant clearly demonstrates acceptance of

responsibility for [her] offense," the offense level is decreased by two levels. U.S.S.G. § 3E1.1(a).

It is Bogan's burden to demonstrate "by a preponderance of the evidence that a reduction for

acceptance of responsibility is warranted." *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001)

(citations omitted).

Bogan argues she carried her burden, pointing out that she timely entered a guilty plea (which also caused her co-defendant to plead guilty) and she fully described her criminal conduct at her plea hearing. The government acknowledges Bogan's cooperation but nevertheless contends that "her plea alone is not sufficient to support acceptance of responsibility because it is outweighed by [her] conduct that is inconsistent with acceptance of responsibility." We agree with the government.

Pleading guilty does not automatically entitle a defendant to an offense level reduction under U.S.S.G. § 3E1.1. *United States v. Turner*, 324 F.3d 456, 463 (6th Cir. 2003); U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.3 ("A defendant who enters a guilty plea is not entitled to an adjustment . . . as a matter of right."). Rather, the Guidelines provide a non-exhaustive list of factors to consider in determining whether a defendant qualifies for the acceptance-of-responsibility reduction. *See id.* § 3E1.1 cmt. n.1(a)-(h).

The first factor states, in part, that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* § 3E1.1 cmt. n.1(a). In denying Bogan's objection, the district court commented that "[Bogan] sounds like a defendant . . . arguing that she is not guilty," and continued, "[She] has repeatedly minimized and denied criminal conduct after her guilty plea." A review of the record supports the district court's observation.

During her first interview Bogan told Williams that she signed the loan papers believing that Coleman had received permission to use Stubbs's identity. Bogan also said that she took title to the vehicles in her name as a favor to Coleman, who Bogan believed was unable to obtain automobile insurance in her own name. Bogan also maintained that "she did not know the money orders were counterfeit . . . [and that] she was an unknowing participant in the offense[s]." Williams advised Bogan that her statements made it appear she was not guilty at all. At her second interview Bogan reiterated that she "adamantly believed" Coleman had received permission to use Stubbs's information.

Although Bogan's counsel later stated that Bogan "recognizes she did not acknowledge her criminal conduct during the first two presentence interviews . . . [and she] wishes to state she realizes she committed the crimes detailed in the Indictment," Bogan herself wrote a letter to the judge in which she continued to deny her criminal conduct: "I thought I was helping [Coleman] out [because] she told me [Stubbs] was who's [sic] identity she had[,] she said [Stubbs] gave her permission."

Coleman, during her own pre-sentence interview, presented a different theory of the case—claiming that it was Bogan who first approached her about using Stubbs's identity, and that the vehicles were purchased for Bogan's personal use. Bogan argues this should not prevent her from receiving the acceptance-of-responsibility adjustment. And it does not. The district court denied Bogan's request for a reduction not because her story differed from Coleman's, but rather

because, as described above, she "repeatedly minimized and *denied* criminal conduct after her guilty plea." (Emphasis added.)  The court assessed Bogan's post-plea comments without regard to Coleman's version of the events.

V.

For these reasons, we affirm the district court.