[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11048
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 8, 2010
JOHN LEY
CLERK

D.C. Docket No. 2:07-cr-00222-MHT-CSC-1

UNITED STATES OF AMERICA,

                                                  Plaintiff - Appellee,

    versus

ANTONIO D. MCDADE, a.k.a. T Dawg,

                                                  Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 8, 2010)

Before CARNES, MARTIN and FAY, Circuit Judges.

PER CURIAM:

    Antonio D. McDade appeals his 240-month sentence, imposed after he

pleaded guilty without a plea agreement to one count of producing child

pornography in violation of 18 U.S.C. § 2251(a).[1]  McDade argues here that the district court erroneously applied two sentencing enhancements when calculating his Sentencing Guidelines range, thereby making him accountable for the conduct of others.  He also argues that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment given that his mental retardation reduces his personal culpability.  After review, we hold that the district court correctly applied the sentencing enhancements and that McDade's sentence does not plainly violate the Eighth Amendment.  Accordingly, we affirm.

I.

---

[1]Section 2251(a) provides that

> [a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).

On July 6, 2005, police responded to a call that a 14-year-old girl, whom we will call T.P., had been raped. She reported that she was visiting a friend the night before and had called her friend McDade who lived nearby for a ride home. After the two walked to McDade's residence, McDade told T.P. that his car needed to be repaired and that he would not be able to drive her home. McDade then took T.P. across the street to a house where men were sitting outside smoking and drinking. One of those men, Courtney Flowers, age 21, took T.P. upstairs to a room and instructed her to perform oral sex on him and thereafter to have sexual intercourse with him. While they were engaged in sexual intercourse, others, including 19-year-old Noah Figueroa, entered the room and also began receiving oral sex from T.P.

Meanwhile, back outside, an individual named Big Boy returned a video camera that he had borrowed from McDade. McDade then entered the house, and because the lights were off, he turned the camera on and used its light to find his way. He then proceeded to an upstairs room from which he heard someone talking. With the camera rolling, McDade entered the room, flipped the lights on, and found T.P. having sex. According to McDade, he pointed the camera at T.P. and continued to record "to see that [T.P.] wouldn't holler rape or something." But even after T.P. did not call out for help, he continued to film her having sex.

And while Figueroa was receiving oral sex from T.P., McDade came "closer with the video camera" at Figueroa's direction. Then, after Flowers and Figueroa finished having sex with T.P., McDade filmed her lying nude on the bed while being penetrated with an empty beer bottle. All told, five or six men had sex with T.P. during the course of the night, and McDade had filmed for seven minutes.

Following McDade's sentencing hearing, the district court calculated his guideline range as 292 to 360 months based on an offense level of 38 and a criminal history category of III. In determining his offense level, the district court gave McDade a two-level enhancement under United States Sentencing Guidelines § 2G2.1(b)(2)(A) (Nov. 2009) because the offense involved "the commission of a sexual act or sexual contact." It also gave him a four-level enhancement under U.S.S.G. § 2G2.1(b)(4), finding that the sexual act with the beer bottle portrayed sadistic conduct. The district court, however, varied downward from the advisory guideline range because of McDade's mental capacity. It found McDade to be "at least mildly mentally retarded," stating that "the evidence supporting this conclusion—including multiple I.Q. tests, educational records, and the testimony of McDade's expert, Dr. Thomas J. Boll—is simply overwhelming." Accordingly, the district court sentenced

McDade to 240 months—which constituted a downward variance of 52 months—and lifetime supervised release.[2]

## II.

"We review the district court's interpretation of the Sentencing Guidelines *de novo* and accept its factual findings unless clearly erroneous. An error in the district court's calculation of the Sentencing Guidelines range warrants vacating the sentence, unless the error is harmless." United States v. Barner, 572 F.3d 1239, 1247 (11th Cir. 2009) (citation omitted). But where, as here, a defendant raises a sentencing argument for the first time on appeal, we will only vacate the sentence upon a finding of plain error. See United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005) (quotation marks omitted).

McDade argues that the district court erroneously enhanced his sentence under U.S.S.G. § 2G2.1(b)(2)(A) and § 2G2.1(b)(4). Section 2G2.1(b)(2)(A) provides a two-level enhancement if the "offense involved . . . the commission of a

---

[2]At the sentencing hearing, McDade's counsel requested a 240-month sentence.

sexual act or sexual contact." Those terms are defined to include sexual intercourse, oral sex, and the intentional touching, either directly or through the clothing, of private areas with the intent to arouse or gratify the sexual desire of any person. See U.S.S.G. § 2G2.1 cmt. 2 (defining "sexual act" and "sexual contact" by reference to 18 U.S.C. § 2246). As for § 2G2.1(b)(4), it provides a four-level enhancement if "the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." McDade contends that these enhancements should not apply because he was merely the cameraman and that the evidence failed to establish that he was the one engaging in the sexual acts or sadistic conduct.

We conclude that the enhancements were correctly applied. In determining McDade's sentence, the district court was required to consult the guidelines and to correctly calculate the range as provided. See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). Here, the application of the two enhancements did not require a finding that McDade himself engaged in a sexual act or sexual conduct with T.P. or that he was the one who performed the sadistic act involving the beer bottle. This follows from the plain wording of the enhancements themselves. Section § 2G2.1(b)(2)(A) only requires that the offense (i.e., the production of child pornography) "involve" a sexual act or sexual contact. Likewise, the

enhancement under § 2G2.1(b)(4) applies if the child pornography "portrays sadistic or masochistic conduct or other depictions of violence." The application of these enhancements thus turned not on what sexually explicit conduct McDade may have personally participated in but rather on what was contained in or involved with the video he shot.[3]

Our conclusion regarding these enhancements is also supported by the statutory text of 18 U.S.C. § 2251(a), the offense of conviction. McDade pleaded guilty to producing a visual depiction of a minor engaging in "sexually explicit conduct." Under the statute, "sexually explicit conduct" is defined to include among other things the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). Section 2251(a) therefore does not require in all cases that the child pornography show sexual contact, a sexual act, or sadistic conduct to support a conviction; a sexually provocative depiction of the genitals of any person will suffice. The guidelines therefore increase the offense level for the crime based on what the minor child may have been subject to during the production of the child pornography. For the most basic offense, the guidelines

_____

[3]At the sentencing hearing, McDade's counsel conceded that under this interpretation, the two-level enhancement clearly applied because the video portrays in graphic detail not only multiple instances of sexual contact but also sexual acts. As to the four-level enhancement, McDade does not challenge on appeal the finding that the sexual act with the beer bottle, also depicted on the video, was clearly sadistic.

7

provide a level of 32. But when the offense involves a sexual act or sexual contact, the base offense level is increased by two, and by four if the offense involves material portraying sadistic conduct. U.S.S.G. § 2G2.1(a), (b)(2)(A), (b)(4). We therefore find no error in the district court's interpretation that the application of these sentencing enhancements did not turn on McDade's personal involvement in the sexual acts or sadistic conduct.

Neither do we find persuasive McDade's argument that the district court should have taken his diminished mental capacity into account when determining whether the enhancements applied. Unlike other enhancements in which the application turns in part on the defendant's mental state, the application of these enhancements did not. Nothing in the text of the enhancements requires a finding, for example, that the defendant intentionally, purposefully, or willfully filmed the sexually explicit conduct giving rise to the application of the enhancements. Cf. United States v. Turner, 324 F.3d 456, 461 (6th Cir. 2003) (stating that because the obstruction-of-justice enhancement speaks in terms of conduct that is "willful," the enhancement would not be applicable to a defendant who proved that he lacked the mental capacity to willfully obstruct justice). The district court therefore did not err in failing to take into account McDade's diminished mental capacity when calculating his guideline range.

For these reasons, we find no error, plain or otherwise, in the district court's application of the sentencing enhancements under § 2G2.1(b)(2)(A) and § 2G2.1(b)(4).

III.

McDade also argues for the first time on appeal that his sentence violates the Eighth Amendment. We therefore review McDade's challenge for plain error. See Raad, 406 F.3d at 1323.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. "The amendment 'contains a narrow proportionality principle that applies to noncapital sentences.'" United States v. Johnson, 451 F.3d 1239, 1242 (11th Cir. 2006) (quoting Ewing v. California, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185 (2003)) (internal quotation marks omitted). "'In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.'" Id. at 1243 (quoting United States v. Moriarty, 429 F.3d 1012, 1024 (11th Cir. 2005)). "This is so because we accord substantial deference to Congress, as it possesses broad authority to determine the types and limits of punishments for crimes." Raad, 406 F.3d at 1323 (quotation marks omitted). For that reason, the Supreme Court has made it

9

clear that, "'[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.'" Solem v. Helm, 463 U.S. 277, 289–90, 103 S. Ct. 3001, 3009 (1983) (quoting Rummel v. Estelle, 445 U.S. 263, 272, 100 S. Ct. 1133, 1138 (1980) (alterations in original)).

In evaluating an Eighth Amendment challenge to a noncapital sentence, "a reviewing court must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed." United States v. Reynolds, 215 F.3d 1210, 1214 (11th Cir. 2000). The defendant bears the burden of making this showing. Johnson, 451 F.3d at 1243. "If the sentence is grossly disproportionate, 'the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions.'" Id. (quoting Raad, 406 F.3d at 1324).

McDade has not shown that his sentence plainly violates the Eighth Amendment. McDade's 240-month sentence—52 months below his guideline range—falls between the statutory minimum and maximum of 15 to 30 years. See 18 U.S.C. § 2251(e). We routinely recognize sentences within the statutory limits generally do not violate the Eighth Amendment, and that a defendant whose sentence falls below the statutory maximum cannot make the threshold showing of gross disproportionality. See, e.g., Johnson, 451 F.3d at 1243; Raad, 406 F.3d at

10

1324 & n.4. We also cannot say that McDade's diminished mental capacity

warrants a finding of gross disproportionality. In holding that the execution of a

mentally retarded individual violates the Eighth Amendment, the Supreme Court

stated that

> [m]entally retarded persons frequently know the difference between right and wrong and are competent to stand trial. Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others. There is no evidence that they are more likely to engage in criminal conduct than others, but there is abundant evidence that they often act on impulse rather than pursuant to a premeditated plan, and that in group settings they are followers rather than leaders. Their deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability.

Atkins v. Virginia, 536 U.S. 304, 318, 122 S. Ct. 2242, 2250–51 (2002). In

granting McDade a downward variance of 52 months, the district court

specifically took into account McDade's personal culpability in light of his

diminished mental capacity, paying particular attention to the fact that McDade

may have simply been going along with the group and filming the acts at the

direction of the other members of the group. The district court, however, found

that McDade "did much more than simply hold a camera." This finding was not

clearly erroneous. As the district court said, the evidence clearly showed that he

11

was part of what was going on, thereby encouraging it.[4]  In view of our Eighth Amendment precedent and having considered the record in the case, we cannot say that the district court committed plain error by imposing the sentence it did.[5]  It held McDade responsible for his conduct alone, after taking into account his diminished mental capacity.

AFFIRMED.

---

[4]For example, the probation officer testified that during the sexual act with the beer bottle McDade's voice can be heard on the video saying "Open your legs a little wider."

[5]McDade also believes that his sentence is unfair because his co-defendants, the ones actually engaged in the sexually explicit conduct with T.P., cooperated with the prosecution and had their federal cases dismissed, thereby escaping any imprisonment.  We are sympathetic to McDade's argument, but it does not excuse his conduct and provides no justification for us to alter the sentence imposed based on that conduct.